IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STERLING RAY CUNIO,

    Plaintiff,

v.

KATE BROWN, in her Official Capacity as Governor of the State of Oregon; COLETTE S. PETERS, in her Official Capacity as the Director of the Oregon Department of Corrections; KRISTIN WINGES-YANEZ, in her Official Capacity as Chairperson, Oregon Board of Parole and Post-Prison Supervision; jointly and severally,

    Defendants.

Case No. 6:14-cv-01647-TC

ORDER

COFFIN, Magistrate Judge:

    Plaintiff Sterling Cunio, one of five individuals under the age of 17 convicted of aggravated murder between 1989 and 1995, filed a complaint in this Court under 42 U.S.C. § 1983. Defendants Kate Brown, Colette Peters, and Kristin Winges-Yanez move to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). For the reasons set forth below,

Page 1 - ORDER

defendants' motion is granted.

## BACKGROUND

Plaintiff was born in April 1977. First Am. Compl. ("FAC") ¶ 45. In January 1994, three months shy of his 17th birthday, plaintiff kidnaped, robbed, and killed two people with 18-year-old Wilford Hill. Id. at ¶ 49; Hallman Decl. Ex. 1.[1] Following a stipulated facts trial, the criminal court convicted plaintiff of two counts of aggravated murder, two counts of first-degree kidnaping, and two counts of first-degree robbery, and sentenced him to two consecutive sentences of life with parole, followed by partially-consecutive, upward-durational departure sentences totaling 280 months' imprisonment. FAC ¶¶ 50-52; Hallman Decl. Ex. 2.

At the time of plaintiff's conviction, Oregon had generally replaced its indeterminate sentencing and parole scheme with a system of determinate sentencing based on guidelines. State ex rel. Engweiler v. Felton, 350 Or. 592, 598, 260 P.3d 448 (2011). Nevertheless, juvenile aggravated murderers continued to receive indeterminate life sentences with the possibility of parole until 1995. Id.; see also White v. Belleque, 2010 WL 5625800, *1 (D.Or. Oct. 21, 2010), adopted by 2011 WL 208262 (D.Or. Jan. 21, 2011)

---

[1] In moving for dismissal, defendants submitted documents relating to the underlying state court proceedings. See generally Hallman Decl. Plaintiff furnished some of the same documents, as well as additional materials regarding his sentencing and appeals; where duplicative, the Court cites to defendants' submissions. See generally O'Connor Decl. The parties' evidence is subject to judicial notice as plaintiff's complaint either incorporates those documents by reference or they are part of the public record and not subject to reasonable dispute. Fed. R. Evid. 201; Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001).

Page 2 - ORDER

("Oregon law specifically provided that juveniles who committed aggravated murder when under age seventeen could not be sentenced to death, life without parole (true life) or to a mandatory thirty year minimum sentence, the three sentencing options available for adults convicted of such an offense [such that] life imprisonment with no mandatory minimum" was the only available sentencing option in 1994) (citation omitted). In other words, Oregon law applied a bifurcated sentencing scheme to individuals under the age of seventeen convicted in a single criminal judgment of aggravated murder and other non-murder felonies between 1989 and 1995.

Although the Oregon Board of Parole and Post-Prison Supervision ("Board") controls the amount of time an individual spends in prison for an indeterminate sentence, it did not have any rules governing parole decisions until 1999. Engweiler, 350 Or. at 599. The Board's first set of juvenile aggravated murderer rules ("JAM Rules") required it to conduct a prison term hearing and set a "review date" for each prisoner, which would determine a schedule for reviews and could ultimately result in a parole release date. Id. The review date was set on the basis of a matrix that considered the crime's severity and the inmate's criminal history/risk assessment. Id. If the Board denied parole, the inmate could petition for review after 480 months (40 years) to establish that he was capable of rehabilitation within a reasonable period of time. Id.

In 1999, the Board conducted a prison term hearing for plaintiff pursuant to the JAM Rules and determined that the applicable unified matrix range was "life." Hallman Decl. Ex. 3. As a result, plaintiff could not ask the Board to review his parole

Page 3 - ORDER

eligibility until 2039 - ten years longer than adults convicted of the same crime and sentenced to the mandatory minimum. Upon administrative review, the Board upheld its decision and the Oregon Court of Appeals subsequently dismissed plaintiff's petition. Hallman Decl. Exs. 4-5.

In 2011, the Oregon Supreme Court invalidated the 1999 JAM Rules, holding that the Board did not have authority to require an intermediate review process where the prisoner must demonstrate that he is capable of rehabilitation before he is deemed eligible for parole consideration. Engweiler, 350 Or. at 616. Instead, the Board was authorized to conduct a parole hearing regarding juvenile aggravated murderers and either set an initial release date or explain why it chose not to do so. Id. at 630. Based on the Engweiler decision, the Board promulgated a new set of JAM Rules, which, in pertinent part, required it to conduct a "prison term hearing" and set a "projected parole release date" for inmates who committed aggravated murder between 1989 and 1995. Or. Admin. Rule 255-032-0005(4). Such individuals are no longer required to demonstrate that they are capable of rehabilitation before the Board may consider them eligible for parole; rather, the projected parole release date is determined "in accordance with the guidelines and matrix that apply with respect to the date of the crime." Id.

In 2012, plaintiff received a prison term hearing under the revised JAM Rules, during which the Board determined that the applicable matrix range was "576 months to life." Hallman Decl. Ex. 6, at 2. The Board found that two aggravating factors, and one mitigating factor ("evidence of reduced responsibility" due to

Page 4 - ORDER

age), existed at the time of plaintiff's 1995 entry into custody. Id.; see also O'Connor Decl. Ex. 4, at 4-6 (Board describing its procedures at plaintiff's 2012 prison term hearing). Based on that evidence, the Board set a unified prison term of 576 months (48 years) - i.e. 288 months (24 years) for each count of aggravated murder. Hallman Decl. Ex. 6, at 2. As such, plaintiff will not be up for parole until his exit interview in 2042, which will be his first opportunity to present evidence of maturation or rehabilitation. Id.; FAC ¶¶ 40-43, 57; Or. Admin. R. 255-060-0006. Plaintiff's remaining determinate sentences are consecutive thereto; accordingly, he will only begin serving those sentences once paroled. Hallman Decl. Ex. 6, at 2. In addition to the sentences arising from the January 1994 incident, plaintiff was sentenced to 70 months' imprisonment, consecutive to all other sentences, for the second-degree assault he committed while incarcerated at the age of 20. Id. at 4; FAC ¶¶ 55-58.

Plaintiff timely sought administrative review of the Board's 2012 decision, arguing, in pertinent part, that the Board violated the Eighth and Fourteenth Amendments by refusing to consider evidence of rehabilitation and by "impos[ing] a prison term that effectively means [he] will spend his life in prison." Hallman Decl. Ex. 7, at 2-3. In May 2014, after the Board upheld its decision, plaintiff filed a petition with the Oregon Court of Appeals, renewing his constitutional arguments. See generally Hallman Decl. Exs. 8-9.

In October 2014, plaintiff commenced a lawsuit in this Court under 42 U.S.C. § 1983, alleging that "Oregon's bifurcated sentencing scheme creates a de facto life sentence in violation of"

Page 5 - ORDER

the Eighth and Fourteenth Amendments.[2] Pl.'s Resp. to Mot. Dismiss 18; FAC ¶¶ 80-87. In November 2014, briefing relating to the Board's prison term decision was completed before the Oregon Court of Appeals, however, that case has not yet been set for submission or argument.[3] O'Connor Decl. Ex. 8, at 21; Hallman Decl. Ex. 10. In March 2015, defendants filed the present motion to dismiss.

## STANDARDS

Where the court lacks subject-matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(b)(1). The party seeking to invoke the jurisdiction of the court bears the burden of establishing that such jurisdiction exists. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). In resolving a Fed. R. Civ. P. 12(b)(1) motion, the court may hear evidence regarding subject-matter jurisdiction and resolve factual disputes where necessary: "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the [court] from evaluating for itself the merits of jurisdictional claims." Kingman Reef Atoll Invs., LLC v. United States, 541 F.3d 1189, 1195 (9th Cir. 2008).

Similarly, where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that

---

[2] Plaintiff subsequently amended his complaint but did not substantively alter the nature of his claims.

[3] Plaintiff also has an appeal pending from the circuit court's denial of his petition for post-conviction relief, in which he alleged identical constitutional violations. FAC ¶ 21; O'Connor Decl. Exs. 9-16. As both parties recognize, that case is not relevant to these proceedings. Defs.' Mot. Dismiss 6 n.4.

Page 6 - ORDER

is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). For purposes of a Fed. R. Civ. P. 12(b)(6) motion, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983). Bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012).

## DISCUSSION

Defendants assert that dismissal is warranted under Younger v. Harris, 401 U.S. 37 (1971), in light of plaintiff's coterminous state court proceeding. Alternatively, defendants argue that plaintiff's complaint fails to state a claim as a matter of law.

Absent "exceptional circumstances," the Younger doctrine precludes federal courts sitting in equity from enjoining "pending state criminal proceedings" or state "civil enforcement actions akin to criminal proceedings." ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund, 754 F.3d 754, 758-59 (9th Cir. 2014) (citations and internal quotations omitted). Abstention by the federal district court is required if: (1) the state proceeding is ongoing; (2) that proceeding implicates important state interests; (3) there is an adequate opportunity to raise constitutional challenges in the state proceeding; and (4) the requested relief would enjoin or have the practical effect of enjoining the ongoing state

Page 7 - ORDER

proceeding. Id. (citations omitted); see also Canatella v. California, 404 F.3d 1106, 1111-13 (9th Cir. 2005) (summarizing the Younger doctrine's impact on federal jurisdiction).

Initially, plaintiff's appeal of the Board's 2012 decision represents the type of state proceeding covered by Younger. Maney v. Winges-Yanez, 2014 WL 5038302, *3 (D.Or. Oct. 8, 2014) (citations omitted). Furthermore, plaintiff "acknowledges [that, identical to this case,] his arguments [before the Oregon Court of Appeals rely on] the Eighth and Fourteenth Amendments and recent case law interpreting those provisions." Pl.'s Resp. to Mot. Dismiss 23; see also Hallman Decl. Ex. 9, at 43-52 (plaintiff asserting in his appellate brief that he has no meaningful opportunity for release due to the combination of his determinate sentences and the Board's 2012 decision). Plaintiff also does not dispute that the first, second, and fourth Younger elements are met. Pl.'s Resp. to Mot. Dismiss 19-28; Gilbertson v. Albright, 381 F.3d 965, 982-83 (9th Cir. 2004) (en banc); Maney, 2014 WL 3778309 at *7. This case therefore hinges on the third Younger factor or the existence of exceptional circumstances.

I.  Adequate Opportunity to Raise Constitutional Challenges

Plaintiff argues that "[t]he unique application of Oregon's bifurcated sentencing scheme [prevents] state court review [of] the merits" of his allegations regarding the combined effect of his indeterminate and determinate sentences. Pl.'s Resp. to Mot. Dismiss 21-22. According to plaintiff, the Board "relied on the procedural bars caused by the state's bifurcated sentencing scheme to avoid grappling with the federal constitutional questions presented in the case." Id. at 24.

Page 8 - ORDER

Plaintiff's argument is premised on two misconceptions. First, the Board did not refuse to consider his constitutional claims and has not raised any procedural bars in relation thereto. See Defs.' Mot. Dismiss 9 (defendants are neither "are aware of" nor assert any "procedural bar that would prevent plaintiff from obtaining a decision on the merits in the state proceeding"). Indeed, the record before the Court demonstrates that the Board rejected plaintiff's claims on the merits and is defending them before the Oregon Court of Appeals on the merits. See Hallman Decl. Ex. 8, at 1-2 (Board's initial assessment of plaintiff's constitutional claims: "[y]ou argue that this prison term, combined with your consecutive (sentencing guidelines) sentences amounts to life imprisonment [but your] argument is not persuasive [and your] remaining allegations . . . are not supported by the factual record, are not sufficiently developed or explained in the review request, are without merit, or some combination of these factors"); see also O'Connor Decl. Ex. 7, at 27-29 (defendants' response to plaintiff's pending appeal, asserting no relevant procedural bars).[4] Thus, as defendants observe, while "the Board completely lacks any authority to review or modify plaintiff's guidelines sentences[,] that does not mean that the Board [or the Oregon Court of Appeals cannot] consider the fact that plaintiff has 280 months of guideline sentences consecutive to his two life terms as part of

---

[4] An independent review of defendants' opposition reflects one reference to a procedural bar concerning whether plaintiff "preserved or exhausted his claim that the exclusion of evidence about [his] institutional conduct or psychological evaluation was inconsistent with OAR 255-035-0022(2)." O'Connor Decl. Ex. 7, at 19, 28-29. This issue is unrelated to plaintiff's constitutional claims and immaterial to the third Younger element.

Page 9 - ORDER

the analysis of whether the prison term decision was constitutional." Defs.' Reply to Mot. Dismiss 4.

Second, this Court's review of sentencing and parole decisions is bifurcated in precisely the same way as the Oregon courts' review. It is well-established under the Heck doctrine that a plaintiff may not bring claims that lie "within the core of habeas corpus" in a civil suit under 42 U.S.C. § 1983. Thornton v. Brown, 757 F.3d 834, 840 (9th Cir. 2013) (citation and internal quotations omitted). As such, "a person who is in state custody may not use § 1983 to challenge the very fact or duration of confinement." Id. at 841 (citation and internal quotations omitted). Rather, all such claims must be brought under federal habeas corpus following the exhaustion of state remedies. Preiser v. Rodriguez, 411 U.S. 475, 489-90 (1973). As plaintiff acknowledges, Oregon law prescribes a similar procedure for seeking post-petition relief based on the alleged unlawfulness of a conviction or sentence. Pl.'s Resp. to Mot. Dismiss 11-14; see also Or. Rev. Stat. § 138.540 (a petition for post-conviction relief is the "exclusive means" for challenging the very fact or duration of confinement).

Conversely, a plaintiff may bring claims regarding the conditions of his confinement, or the procedures relating to a parole decision, under 42 U.S.C. § 1983. Wilkinson v. Dotson, 544 U.S. 74, 82-84 (2005). Oregon law likewise provides a mechanism through which an inmate can challenge the constitutionality of a parole decision or appeal a final order of the Board. Or. Admin. R. 255-080-0010(5); Or. Rev. Stat. § 144.335(1). Upon review, the Oregon Court of Appeal may consider, amongst other things, whether the Board's order is "[i]nconsistent with an agency rule, an

Page 10- ORDER

officially stated agency position, or a prior agency practice" or is "in violation of a constitutional or statutory provision." Or. Rev. Stat. §§ 144.335(3), 183.482(8)(b); see also Dubinka v. Judges of Superior Ct., 23 F.3d 218, 223-24 (9th Cir. 1994) (third Younger factor met where the "state law [does] not impose procedural barriers to raising the constitutional claims in the state court proceedings") (citation omitted).

In sum, both Oregon and federal courts may consider whether a prisoner's conviction or sentence is unconstitutional in only one type of proceeding: habeas corpus at the federal level and post-conviction relief at the state level. Both forums may also consider, in a separate type of proceeding, challenges to the lawfulness of detention, including to the constitutionality of a parole decision. Plaintiff's pending case with the Oregon Court of Appeals and this 42 U.S.C. § 1983 action both fall within the latter category. Accordingly, plaintiff cannot show that the scope of relief in this Court is broader, or even different, from that which he can receive before the state courts.[5]

Finally, the Court notes that similar constitutional

---

[5] Plaintiff relies on Meredith v. Oregon, 321 F.3d 807 (9th Cir. 2003) (as amended), in support of the proposition that Oregon's administrative procedures erect procedural bars in relation to his constitutional claims. As discussed herein, that is simply not the case. Moreover, Meredith is distinguishable, as that case involved entirely discrete and singular administrative review procedures that rendered the plaintiff's state court constitutional claims time-barred. Meredith, 321 F.3d at 810-20. By contrast, there are no timeliness issues inherent to this case and, unlike in Meredith, the Board did not prevent plaintiff from presenting evidence regarding his constitutional claims. As a result, the equitable and comity considerations underlying Meredith have no application here. See Baffert v. Cal. Horse Racing Bd., 332 F.3d 613, 620-21 (9th Cir. 2003) (declining jurisdiction under Younger, and distinguishing Meredith, where the state forum was not inadequate on timeliness grounds).

Page 11- ORDER

challenges to Board decisions have been held to "fall . . . within the carefully defined boundaries" of Younger abstention. See Sopher v. Washington, 2008 WL 4793173, *10 (D.Or. Oct. 30, 2008), aff'd, 370 Fed.Appx. 846 (9th Cir. 2010) (where the plaintiff raised identical constitutional challenges is his state appeal of a circuit court decision denying mandamus relief, Younger applied to preclude the exercise of federal jurisdiction); see also McClure v. Baker, 2008 WL 268361, *1-2 (D.Or. Jan. 29, 2008) (Younger abstention appropriate in a constitutional challenge to Board procedures); Nelson v. Murphy, 44 F.3d 497, 502 (7th Cir.), cert. denied, 516 U.S. 1027 (1995) ("an inmate already participating in state litigation must make his stand there rather than attempt the equivalent of federal-defense removal by filing an independent § 1983 suit"). Therefore, the Court finds that plaintiff has an adequate opportunity to fairly and fully raise his federal constitutional claims before the Oregon Court of Appeals.

II.  Other Exceptional Circumstances

Plaintiff contends that, even if "the four elements of the Younger doctrine are satisfied, the Younger abstention doctrine does not apply because extraordinary circumstances render the state court incapable of fairly and fully adjudicating [his] federal constitutional claims." Pl.'s Resp. to Mot. Dismiss 24 (citation and internal quotations omitted). Yet, beyond noting generally that "[t]his case is the continuation of years of litigation resulting from defendants' failure to comply with state and federal law when deciding how to determine the eligibility for release of [plaintiff] and the four other boys under 17 years old convicted of aggravated murder in adult court," plaintiff does not specify in

Page 12- ORDER

what manner such circumstances are present. Id. at 24-25.

In any event, federal courts have "confined very narrowly" the type of circumstances under which federal intervention is appropriate despite the existence of pending state criminal or quasi-criminal proceedings. See Younger, 401 U.S. at 53-54 (federal court may retain jurisdiction where, for instance, there is a showing of "bad faith [or] harassment" by state officials, the state law involved is "flagrantly and patently violative of express constitutional prohibitions," or there are other "extraordinary circumstances in which the necessary irreparable injury can be shown") (citation and internal quotations omitted); see also Kugler v. Helfant, 421 U.S. 117, 124-25, reh'g denied, 421 U.S. 1017 (1975) ("[t]he very nature of extraordinary circumstances, of course, makes it impossible to anticipate and define every situation that might create a sufficient threat of such great, immediate, and irreparable injury as to warrant intervention in state criminal proceedings . . . [nevertheless, such circumstances must create] an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation").

Here, plaintiff does not identify the existence of any substantial and imminent irreparable injury. See generally FAC; Pl.'s Resp. to Mot. Dismiss. He likewise does not cite to any source of law that clearly requires the Board to provide a release hearing sooner than 2042,[6] such that the Court cannot conclude that

---

[6] Plaintiff nonetheless does cite to White in support of the proposition that the Board was required to give him a review hearing. Pl.'s Resp. to Mot. Dismiss 15. Plaintiff's reliance on this case is unpersuasive in two respects. First, the Board

Page 13- ORDER

the Board's decision clearly violated his constitutional rights. Id. Further, plaintiff has not cited to, and the Court is not aware of, any authority holding, either directly or by analogy, that a delay in providing an aggravated murderer, who was also sentenced to other serious crimes for which he must serve time, the meaningful opportunity to present evidence of rehabilitation or maturation constitutes the kind of exceptional circumstance contemplated by Younger. Id.; see also Carden v. Montana, 626 F.2d 82, 83-84 (9th Cir. 1980) (allegations of a speedy trial violation did not warrant federal intervention). Thus, plaintiff's belief that the Board wrongly denied him a release hearing does not, without more, preclude application of the Younger abstention doctrine.

Because each of the Younger elements are met and no exceptional circumstances are present, this Court must decline jurisdiction over plaintiff's federal lawsuit. Moreover, dismissal is the proper remedy as plaintiff is seeking only declaratory and injunctive relief in these proceedings. Gilbertson, 381 F.3d at 979-82. Defendants' motion is granted.

///
///
///
///

---

issued new JAM Rules after White on which it based its 2012 prison term decision; to date, no court has invalidated those rules. Second, unlike the inmates in White, plaintiff was convicted of two counts of aggravated murder, which resulted in consecutive terms of imprisonment. White, 2010 WL 5625800 at *1.

Page 14 ORDER

## CONCLUSION

Defendants' motion to dismiss (doc. 20) is GRANTED and this case is DISMISSED.

Dated this 27th day of May 2015.

_____
Thomas M. Coffin
United States Magistrate Judge