UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

**STERLING RAY CUNIO**,

    Plaintiff,

v.

**KATE BROWN**, in her Official Capacity as Governor of the State of Oregon, **COLLETTE S. PETERS**, in her Official Capacity as Director of the Oregon Department of Corrections; **MICHAEL HSU** in his Official Capacity as Chairperson, Oregon Board of Parole and Post-Prison Supervision; jointly and severally,

    Defendants.

Case No. 6:14-cv-01647-MK

**OPINION AND ORDER**[1]

**KASUBHAI, Magistrate Judge:**

## INTRODUCTION

Plaintiff filed this action against Defendants alleging violations of the Eighth and Fourteenth Amendments under 42 U.S.C. § 1983. Before the Court are Plaintiff's Motion for Summary Judgment (ECF. No. 57) and Defendants' Cross-Motion for Summary Judgment (ECF No. 60). On December 10, 2019, the Court heard oral argument.

For the reasons set forth below, the Court grants Plaintiff's Motion for Summary Judgment (ECF No. 57) and denies Defendants' Cross-Motion for Summary Judgment (ECF No. 60) as moot.

---

[1] Both parties consented to full jurisdiction by a U.S. Magistrate Judge.

# BACKGROUND

In August 1994, Plaintiff Sterling Cunio was convicted and sentenced for offenses he committed when he was 16 years old. Third Am. Comp. ¶ 18, ECF No. 43. Under Oregon law in 1994, Plaintiff was sentenced using a bifurcated sentencing scheme of indeterminate and determinate sentences. *Id.* ¶ 5. Under an indeterminate sentence, a sentencing court imposes a maximum sentence. *Id.* ¶ 6. And, under Oregon Revised Statute § 163.105, a sentencing judge in 1994 was required to impose an indeterminate life sentence on any person convicted of aggravated murder. *Id.* ¶ 10. In comparison, under a determinate sentence, a sentencing court imposes a definite duration of incarceration that the Oregon Board of Parole and Post-Prison Supervision ("Parole Board") cannot alter. *Id.* ¶ 7.

Plaintiff was convicted and sentenced to a combination of indeterminate and determinate sentences, as follows:

| Count 1: Aggravated Murder | Indeterminate: Life |
| Count 2: Aggravated Murder | Indeterminate: Life, consecutive to Count 1 |
| Count 5: Kidnapping in the First Degree | Determinate: 140 months in prison, 36 months of Post-prison supervision ("PPS"), consecutive to Counts 1 and 2 |
| Count 6: Kidnapping in the First Degree | Determinate: 120 months in prison, 36 months of PPS, consecutive to Counts 1, 2, and 5 |
| Count 7: Robbery in the First Degree | Determinate: 20 months in prison, 36 months of PPS, consecutive to Counts 1, 2, 5, and 6 |
| Count 8: Robbery in the First Degree | Determinate: 20 months in prison, 36 months of PPS, consecutive to Counts 1, 2, 5, and 6, and concurrent with Count 7 |

*Id.* ¶ 18. Plaintiff received two consecutive life sentences for his indeterminate sentences and 280 months in prison with 108 months of PPS for his determinate sentences. *Id.*

Under Oregon Revised Statute § 144.125, when an Oregon Circuit Court imposes a determinate sentence consecutive to an indeterminate life sentence, a person does not begin

serving the consecutive determinate sentence until after the Parole Board holds an "exit interview" hearing. *Id.* ¶ 17. At an exit interview hearing, the Parole Board considers evidence of the person's rehabilitation to determine whether it will affirm or defer the person's scheduled release date. *Id.* ¶¶ 15, 16. However, under Oregon Revised Statute § 144.120, an exit interview hearing will be scheduled only after the Parole Board sets a "prison term" hearing. Stipulation of Facts ¶ 9, ECF No. 53.

In October 2012, the Parole Board held a prison term hearing for Plaintiff's indeterminate sentences and established a 576-month-to-life prison term for Plaintiff's aggravated murder convictions. Third Am. Comp. ¶ 20, ECF No. 53. For Plaintiff's aggravated murder convictions, the Parole Board projected an April 2042 release date. *Id.* Accordingly, Plaintiff could be released from the combined indeterminate and determinate sentences in April 2065 when he is 88 years old. *Id.* Plaintiff sought administrative review of the Parole Board's prison term hearing, but in October 2013, the Parole Board denied Plaintiff relief by adhering to its October 2012 order. *Id.* ¶ 21.

Consequently, Plaintiff filed his first appeal to the Oregon Court of Appeals. *Id.* ¶ 22. In November 2017, the Court of Appeals reversed the Parole Board's order and remanded the order to the Parole Board to set a new prison term hearing. *Id.* On remand, the Parole Board scheduled a new prison term hearing for November 2018. *Id.* ¶ 23. However, the appellate court declined to reach the question of whether the Parole Board's "adult matrix" rules violated the Eighth Amendment. *Id.* ¶ 22. Plaintiff sought reconsideration from the Court of Appeals only on that issue, but the appellate court denied reconsideration. *Id.* Plaintiff then sought review from the Oregon Supreme Court, but was denied review. *Id.* Plaintiff filed a second state appeal

challenging his 1994 convictions. *Id.* ¶ 24. In 2017, the Court of Appeals affirmed. *Id.*
Subsequently, the Oregon Supreme Court held Plaintiff's petition for review in abeyance.

Concurrent with Plaintiff's state court proceedings, he also sought declaratory judgment from the District Court. *Id.* ¶ 27. Under the *Younger* abstention doctrine, this Court dismissed Plaintiff's complaint after concluding that Plaintiff could raise the same challenges in state court. Pl.'s Mot. Summ. J. 8, ECF No. 57. The Ninth Circuit Court of Appeals reversed, holding that

> None of these [state court] proceedings provided Cunio an 'adequate' and 'full and fair' opportunity to challenge the combined effect of his sentences as a *de facto* sentence without parole, or to challenge the constitutionality of Oregon's bifurcated sentencing scheme for juveniles convicted of homicide and non-homicide crimes in a single judgment. The district court therefore should not have abstained.

*Cunio v. Brown*, 692. Fed. Appx. 464, 465 (9th Cir. 2017). This case is now before this Court.

## FACTUAL ALLEGATIONS

Plaintiff filed his Third Amended Complaint on July 31, 2018. Third Am. Compl., ECF No. 43. Defendants' Answer to the Third Amended Complaint, filed on September 4, 2018, denied the substance of Plaintiff's allegations and his entitlement to relief. ECF No. 45. Defendants asserted four affirmative defenses, including failure to state a claim, *Heck* preclusion,[2] *Younger* abstention,[3] and claim and issue preclusion. *Id.* ¶¶ 12-21.

Defendants deny Plaintiff's allegations that the Parole Board applies an "adult matrix" to juveniles convicted of aggravated murder, that it does not consider evidence of rehabilitation at the prison term hearing, and that the exit interview is the first time that the Parole Board considers evidence of rehabilitation or maturity. *Id.* ¶ 2. In addition, Defendants deny that Plaintiff knew the effect of Oregon's bifurcated sentencing scheme on him on October 17, 2012,

---
[2] *See infra* at 14-17.
[3] *See infra* at 17.

that Oregon's sentencing scheme and judicial review process prevent Plaintiff from having an adequate opportunity to obtain a ruling on the merits in that court, and that the sentencing scheme denies Plaintiff a meaningful opportunity for release during his lifetime. *Id.* ¶ 3.

Following Defendants' Answer, Plaintiff filed a Stipulation of Facts that restates the material historical and procedural facts of this case. ECF No. 53. On April 16, 2019, Plaintiff filed a Motion for Summary Judgment. ECF No. 57. Plaintiff moved for summary judgment in all claims made in his Third Amended Complaint and challenged Defendants' affirmative defenses. *Id.* On May 21, 2019, Defendants responded to Plaintiff's Motion for Summary Judgment and filed a Cross-Motion for Summary Judgment. ECF No. 60. In that document, Defendants asserted that: (1) Plaintiff's claims are not ripe; (2) the relief Plaintiff seeks are not cognizable under 42 U.S.C. § 1983; (3) Defendants are immune from suit and are not "persons" under § 1983; (4) Defendant Thompson is entitled to quasi-judicial immunity from injunctive relief; (5) Plaintiff's combined sentences are not unconstitutional; (6) whether Plaintiff has been rehabilitated is immaterial; and (7) Plaintiff's application of Oregon Revised Statute § 161.620 is incorrect and irrelevant. *Id.* at 20-35.

On July 22, 2019, Plaintiff filed a reply to Defendants' Response to Plaintiff's Motion for Summary Judgment and responded to Defendants' Cross-Motion for Summary Judgment. ECF No. 69. In that filing, Plaintiff rejected Defendants' assertions and supplemented his Statement of Facts with recent developments regarding Plaintiff's prison term hearing and changes in Oregon law. *Id.* Plaintiff noted that a prison term hearing was scheduled for Plaintiff on October 2, 2019, and most notably, informed the Court of legislation passed by the Oregon Legislature in 2019. *Id.* at 3-4. The Court finds the legislative history of Senate Bill ("SB") 1008 instructive and quotes Plaintiff's brief below:

> The 2019 Oregon Legislature changed Oregon's sentencing scheme for children tried as adults by enacting [SB] 1008. That bill requires a *Miller* hearing before the Oregon Board of Parole and Post-Prison Supervision (the board) for every person convicted of a crime that the person committed as a child who has served 15 years in prison, regardless of the crimes of conviction or whether the sentencing court imposed consecutive sentences. SB 1008 § 25 (Or. 2019). SB 1008 also requires a state court to hold a "second look" hearing for a person in Oregon Department of Corrections (ODOC) custody who was convicted of a crime the person committed as a child when the person has served half of his or her sentence. SB 1008 § 22. Those sections of the bill apply to sentences imposed on or after January 1, 2020. *Id*. at § 32. The bill thus does not require the board to hold a *Miller* hearing for Mr. Cunio, and it does not require a court to hold a second look hearing for Mr. Cunio.

*Id.* at 2. Plaintiff continued:

> Defendants Collette Peters and Michael Hsu testified in support of SB 1008. They acknowledged in their testimony that current science and case law conclusively establish that children should be provided with a meaningful opportunity for release, regardless of the crime they committed or their sentence structure. Public Hearing on SB 1008 Before H. Comm. on Judiciary, 80th Leg. (Or. Apr. 24, 2019) (testimony of Michael Hsu, available at http://oregon.granicus.com/MediaPlayer.php?clip_id=d12b2e34-3fb3-43d0-8f83-b616d9d8e1f5&meta_id=03daf112-0fca-47f9-98d6-4841587eafdf) (testifying in support of SB 1008 that "juveniles should have a meaningful opportunity to obtain release"); Ex. 13 (written testimony of Collette Peters on SB 1008) ("This bill represents our current and best understandings of creating public safety and are rooted in what we know now from neuroscience about juvenile brain development."). Nonetheless, Defendants in this litigation claim that Oregon's sentencing scheme—the very scheme that they testified should be changed moving forward—suffers from no constitutional infirmities as applied to Mr. Cunio. Yet the central truth driving *Miller* and SB 1008 is that people convicted of crimes as children, even murder, are very likely to be rehabilitated and are entitled to a hearing where a trier of fact determines whether to release them from prison with a meaningful chance to reintegrate into the community.

*Id.* at 3. Defendants subsequently replied by relying on their Cross-motion for Summary Judgment (ECF No. 60). ECF No. 71.

## PLAINTIFF'S CLAIMS

Plaintiff brings two claims. Plaintiff alleges that Oregon's bifurcated sentencing scheme and Defendants' refusal to provide him a *Miller* hearing violates his rights under the Eighth and

Fourteenth Amendments under 42 U.S.C. § 1983. Pl.'s Mot. Summ. J. 21-23, ECF No. 57. As a remedy, Plaintiff asks this Court to order Defendants to provide Plaintiff with a *Miller* hearing so that Plaintiff has a meaningful opportunity to be obtain release. Third Am. Compl. ¶ 68, ECF No. 43.

**LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In determining whether a motion for summary judgment should be denied or granted, "the judge must view the evidence in the light most favorable to the nonmoving party." *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

When parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the

non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

## DISCUSSION

Plaintiff argues that he is entitled to summary judgment on Defendants' four affirmative defenses for failure to state a claim, *Heck* preclusion, *Younger* abstention, and claim and issue preclusion. Pl.'s Mot. Summ. J. 12, ECF No. 57. In response, Defendants filed a Cross-Motion for Summary Judgment asserting that: (1) Plaintiff's claims are not ripe; (2) the relief Plaintiff seeks are not cognizable under 42 U.S.C. § 1983; (3) Defendants are immune from suit and are not "persons" under § 1983; (4) Defendant Thompson is entitled to quasi-judicial immunity from injunctive relief; (5) Plaintiff's combined sentencing scheme is not unconstitutional; (6) whether Plaintiff has been rehabilitated is immaterial; and (7) Plaintiff's application of Oregon Revised Statute § 161.620 are incorrect and irrelevant. Defs.' Mot. Summ. J. 20-35, ECF. No. 60.

**I. Failure to State a Claim and Due Process**

Initially, Defendants argued that Plaintiff failed to plead facts suggesting that the procedures employed by the Parole Board violate his rights under Eighth or the Fourteenth Amendments. Answer ¶ 13, ECF No. 45. Plaintiff also argues that Oregon's bifurcated sentencing scheme and Defendants' refusal to provide a him a meaningful opportunity for release violates his rights under the Eighth and Fourteenth Amendments. Pl.'s Mot. Summ. J. 21-23, ECF No. 57. Further, Defendants contend that Plaintiff failed to plead facts that would suggest that Defendant Peters has any knowledge of involvement with Plaintiff's alleged due

process violations. *Id.* ¶ 14. Defendants contend that because Plaintiff's claims are not ripe, this Court lacks jurisdiction. Defs.' Mot. Summ. J. 20-23, ECF. No. 60.

### A. Supreme Court cases of *Miller* and *Montgomery*

The prohibition against cruel and unusual punishment in the Eighth Amendment "guarantees individuals the right not to be subjected to excessive sanctions." *Roper v. Simmons*, 543 U.S. 551, 560 (2005). "The concept of proportionality is central to the Eighth Amendment." *Graham v. Florida*, 560 U.S. 48, 59 (2010). Proportionality is "'the basic precept of justice that punishment for crime should be graduated and proportioned' to both the offender and the offense." *Miller v. Alabama*, 567 U.S. 460, 469 (2012) (quoting *Roper*, 543 U.S. at 560; quotation in *Roper* omitted). Courts evaluate proportionality primarily "according to 'the evolving standards of decency that mark the progress of a maturing society'" and not in light of historical sentencing practices. *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976); quotation in *Estelle* omitted).

The Eighth Amendment also prohibits a state from sentencing a child to life in prison for a homicide offense, unless the sentencer presumes that the offense was the product of the transience of youth, but nonetheless finds that the child is one of the rare children who is irrevocably corrupt. *Id.* at 479; *Montgomery v. Louisiana*, 136 S. Ct. 718, 726 (2016). A sentence of life without parole imposed on a child "whose crime reflects transient immaturity . . . is disproportionate under the Eighth Amendment." *Montgomery*, 136 S. Ct. at 735. The Supreme Court clarified the substantive rule from *Miller* when it held the rule applies retroactively to cases on collateral review in state court. *Id.* at 732. *Miller* also requires a court to hold a hearing at which "youth and its attendant circumstances are considered as sentencing factors[.]" *Id.* at 733-734.

The rule from *Miller* also applies to a discretionary life without parole sentence, even though *Miller* arose from states that required a sentencing court to impose life without parole on a child. In *Montgomery*, the Supreme Court indicated that *Miller* applies to states with discretionary schemes. The Court held that "[e]ven if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects unfortunate yet transient immaturity. *Montgomery*, 136 S. Ct. at 734. Thus, a court "considers a child's age before sentencing him or her to a lifetime in prison" in states like Oregon, in which a court has discretion in imposing the sentence. *Id.*

After *Montgomery*, the Supreme Court granted several cases *certiorari*, vacating and reversing state court judgments. The Supreme Court sent five cases back to the Arizona state courts for reconsideration. One case involved a juvenile who was convicted of multiple counts of homicide and non-homicide offenses against two victims and under a discretionary sentencing scheme, sentenced to consecutive life sentences under a sentencing scheme that was discretionary, not mandatory, life without parole. *State v. Purcell*, No. CA-CR 13-0614 PRPC, 2015 WL 2453192 (Ariz. App. May 21, 2015), *vacated and remanded by Purcell v. Arizona*, 137 S. Ct. 369 (2016). The trial court had the option to sentence the Defendants to life or life with possible parole after 25 years. *Purcell*, 2015 WL 2453192, at *1. In *Tatum*, Justice Sotomayor references the sentencing of the juvenile defendant in *Purcell v. Arizona*. *Tatum v. Arizona*, 137 S. Ct. 11, 12 (2016). Justice Sotomayor explained that the Eighth Amendment requires more than consideration of an offender's youth, even when the juvenile offender killed two people:

> It is clear after *Montgomery* that the Eighth Amendment requires more than mere consideration of a juvenile offender's age before the imposition of a sentence of life without parole. It requires that a sentencer decide whether the juvenile offender before it is a child "whose crimes reflect transient immaturity" or is one of "those rare children whose crimes reflect irreparable corruption" for whom a life without parole sentence may be appropriate.

*Tatum*, 137 S. Ct. at 12. (Sotomayor, J., concurring) (internal citation omitted). Thus, this Court finds that *Miller* applies to a state with a discretionary sentencing scheme.

### B. Term-of-years sentences

Plaintiff contends that a term-of years sentence violates the Eighth Amendment under *Miller* when it denies a juvenile a meaningful opportunity for release from prison. Pl.'s Mot. Summ. J. 18, ECF No. 57. In a *habeas* case concerning non-homicide offenses, the Ninth Circuit held that a state court decision was contrary to clearly established federal law because there is no material difference, for Eighth Amendment purposes, between an aggregate term-of-years sentence that results in *de facto* life without parole for a juvenile, and a life without parole sentence. *Moore v. Biter*, 725 F.3d 1184, 1191 (9th Cir. 2013). In *Moore*, the Court imposed an aggregate 254-year sentence, and although the state was not required to guarantee his release, the Eighth Amendment required the state to provide Defendant Moore with "'some meaningful opportunity' to reenter society." *Id*. at 1194 (quoting *Graham*, 560 U.S. at 75). The Court reached that conclusion by recognizing that the evolving standards of decency enshrined in the Eighth Amendment requires a state sentencing scheme to acknowledge the offender's potential for maturity and rehabilitation. *Id*. at 1191-94.

Plaintiff also argues that the science on child and juvenile delinquency relied on in *Roper*, *Graham*, and *Miller* also supports the conclusion that the rule from *Miller* applies to a term-of-years sentence that denies a meaningful opportunity for release based on demonstrated maturity and rehabilitation. Pl.'s Mot. Summ. J. 18, ECF No. 57. Most juvenile offenders will mature and outgrow their criminal behavior as they mature. *Roper*, 543 U.S. at 570 (citing Steinberg & Scott, Less Guilty by Reason by Adolescence: Development Immaturity, Diminished Responsibility, and the Juveniles Death Penalty, 58 Am. Psychologist 1009, 1014 (2003)).

Thus, the Court finds that a "meaningful opportunity" must come early enough in a person's life to pursue education, employment, and reintegration into society. Under Oregon's bifurcated sentencing scheme, Plaintiff could be released from the aggregate indeterminate and determinate sentences in April 2065 when he is 88 years old. As such, Oregon's bifurcated sentencing scheme violates the Eighth and Fourteenth Amendments because the sentencing scheme provides no way for Defendants to provide Plaintiff with a meaningful opportunity for release.

### C. Oregon's bifurcated sentencing scheme violates the Eighth Amendment

Plaintiff contends that Oregon's bifurcated sentencing scheme denies Plaintiff a meaningful opportunity for release during his life in violation of the Eighth Amendment. Pl.'s Mot. Summ. J. 21, ECF No. 57. The Court in *Miller* recognized a very narrow exception to the general rule that a state must provide a juvenile with a meaningful opportunity for release based upon demonstrated maturity and rehabilitation. *Miller*, 567 U.S. at 479. That exception applies only when: (1) a state sentencing scheme affords a sentencer discretion to impose life without parole for a homicide conviction; (2) the sentencer holds an individualized sentencing hearing that involves the consideration of the unique and mitigating qualities of the juvenile's youth; (3) the sentencer concludes that the juvenile is "the rare juvenile offender whose crime reflects irreparable corruption[,]" *Id.* at 479-480 (quoting *Roper*, 543 U.S. at 573) (internal quotations omitted); and (4) the sentencer imposes a sentence of life without parole for a homicide conviction, *Miller*, 567 U.S. at 478-481. If those conditions are not met, then a state must provide a juvenile with a meaningful opportunity for release even if the juvenile was convicted of homicide. *Id.*

Here, the exception from Miller does not apply because neither the sentencing judge nor the Parole Board concluded that Plaintiff is irreparably corrupted or incapable of rehabilitation. The sentencing judge did not presume that Plaintiff was capable of rehabilitation or find that Plaintiff was irreparably corrupt. Pl.'s Mot. Summ. J. Ex. 2, ECF No. 57. During Plaintiff's prison term hearing in 2012, the Parole Board refused to consider evidence of his rehabilitation. *Cunio v. Board of Parole and Post-Prison Supervision*, 288 Or. App. 459, 407 P.3d 839 (2017), *rev den*, 418 P.3d 758 (2018). Because Oregon's bifurcated sentencing scheme denies Plaintiff a meaningful opportunity for release during his life in violation of the Eighth Amendment, the Court grants Plaintiff's summary judgment on his first claim.

### D. Denying a meaningful opportunity for release violates the Fourteenth Amendment

Plaintiff's second claim alleges that the Defendants denied him a meaningful opportunity for release in violation of the Due Process Clause of the Fourteenth Amendment. Pl.'s Mot. Summ. J. 22-23, ECF No. 57. This Court finds that the combined effect of the Parole Board's 2012 decision to refuse to hear evidence of Plaintiff's rehabilitation and the consecutive sentencing guideline sentences deny Plaintiff of the release hearings to which he is entitled, in violation of due process of law. *Greenholz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Thus, Plaintiff is entitled to summary judgment on his second claim. *See also Greiman*, 2015 U.S. Dist. LEXIS at 28 (denying the defendant's motion to dismiss the plaintiff's Fourteenth Amendment claim). Because Defendants' refusal to provide Plaintiff with a meaningful opportunity for release denies him due process in violation of the Fourteenth Amendment, the Court grants Plaintiff's summary judgment on his second claim.

## II. *Heck* Preclusion Doctrine

### A. Claims under 42 U.S.C. § 1983

Plaintiff contends that the *Heck* doctrine does not apply to his 42 U.S.C. § 1983 challenge because the remedy he seeks is a release hearing to give him a meaningful opportunity for parole during his lifetime. Pl.'s Mot. Summ. J. 23, ECF No. 57. "Persons subject to state custody generally 'have two potential avenues to remedy violations of their federal constitutional rights: a *habeas* petition under 28 U.S.C. § 2254, and a civil suit under 42 U.S.C. § 1983.'" *Thornton v. Brown*, 757 F.3d 834, 839 (9th Cir. 2014) (quoting *Osborne v. Dist. Attorney's Office*, 423 F.3d 1050, 1053 (9th Cir. 2005)). A writ of *habeas corpus* "is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement . . . even though such a claim may come within the literal terms of § 1983." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (discussing *Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973)). "[C]ourts historically declined to require § 1983 plaintiffs to exhaust state remedies." *Ramirez v. Galaza*, 334 F.3d 850 (9th Cir. 2003). A prisoner may bring a 42 U.S.C. § 1983 suit if his claim satisfies the statutory criteria under that statute unless the claim lies at the "core of *habeas* corpus." *Preiser*, 411 U.S. at 489. Some claims that are not at the "core of *habeas* corpus" may be brought under either § 1983 or *habeas* corpus. *Osborne*, 423 F.3d at 1055.

A claim lies at the "core of *habeas* corpus if 'its success would release the claimant from confinement or shorten its duration, *Preiser*, 411 U.S. at 500, or would necessarily imply the invalidity of the conviction or sentence. *Heck*, 512 U.S. at 487.'" *Thornton*, 757 F.3d at 840. A claim does not "necessarily imply the invalidity of the conviction or sentence" "unless its success will 'inevitably call into question the state court judgment that led to the plaintiff's custody.'" *Id*. at 843 (quoting *Osborne*, 423 F.3d at 1055).

The Supreme Court held that state prisoners had properly brought challenges to parole procedures under § 1983 because the lawsuit, if successful, would grant them a new parole hearing, at most. *Wilkinson v. Dotson*, 544 U.S. 74, 82-84 (2005). The Court stated:

> Success for Dotson does not mean immediate release from confinement or shorter stay in prison; it means at most new eligibility review, which at most will speed consideration of a new parole application. Success for Johnson [whose case was consolidated with Dotson's] means at most a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term . . . Because neither prisoner's claim would necessarily spell speedier release, neither lies at "the core of habeas corpus." *Preiser*, *supra*, at 489, 36 L. Ed. 2d 439, 93 S. Ct. 1827. Finally, the prisoners' claims for future relief (which, if successful, will not necessarily imply the invalidity of confinement or shorten its duration) are yet more distant from that core. *See Balisok*, *supra*, at 648, 137 L. Ed. 2d 906, 117 S. Ct 1584.

*Dotson*, 544 U.S. at 82.

In 2011, the Supreme Court applied the principle from *Dotson* when the Court held that a state prisoner properly brought suit under § 1983 seeking access to DNA evidence as a potential vehicle to challenge his state-court conviction. *Skinner v. Switzer*, 526 U.S. 521 (2011). As the Supreme Court explained:

> Adhering to our opinion in *Dotson*, we hold that a postconviction claim for DNA testing is properly pursued in a § 1983 action. Success in the suit gains for the prisoner only access to the DNA evidence, which may prove exculpatory, inculpatory, or inconclusive. In no event will a judgment that simply orders DNA tests "necessarily impl[y] the unlawfulness of the State's custody.

*Skinner*, 562 U.S. at 525 (quoting *Dotson*, 544 U.S. at 81).

To determine whether *habeas* jurisdiction or a § 1983 action is proper, "'the operative test under *Preiser* and its progeny is whether a successful § 1983 suit 'would necessarily imply that he would serve a shorter sentence . . .'" *Ramirez*, 334 F.3d at 859 (quoting *Leamer v. Fauver*, 288 F.3d 532, 543 (3d Cir. 2002). *Habeas* jurisdiction is proper under *Preiser* "where a challenge to prison conditions would, if successful, necessarily accelerate the prisoner's release."

*Ramirez*, 334 F.3d at 859. "[H]abeas jurisdiction is absent, and a §1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence." *Id*. (citing *Neal v. Shimoda*, 131 F.3d 818 (9th Cir 1997)).

Here, Plaintiff is asking this Court to exercise its authority under § 1983 to declare Oregon's bifurcated sentencing scheme invalid, including the application of the Parole Board's rules to him. Like the prisoners in *Neal* and *Dotson*, Plaintiff's challenge to Oregon's bifurcated sentencing scheme as applied to him would provide only "a ticket to get in the door of the parole board." *Neal*, 131 F.3d at 824. Therefore, the Court finds that Plaintiff's claims would not undermine the validity of the judgment of his conviction or require that his sentence be shortened. Like *Dotson*, Plaintiff would receive only a new hearing or hearings at which a state entity would consider whether to shorten his prison term. Plaintiff properly contends that Defendants would still have the authority to deny his requests for release for the rest of his life if he failed to establish his rehabilitation at those hearings. The Court finds that Plaintiff properly brings these claims under 42 U.S.C. § 1983. *Dotson*, 544 U.S. at 82; *Ramirez*, 334 F.3d at 859.

### **B. Application of Oregon Revised Statute § 161.620 to claims under 42 U.S.C. § 1983**

Plaintiff contends that Oregon Revised Statute § 161.620 may support Plaintiff's 42 U.S.C. § 1983 claim because the statute required the possibility of release when the judgment was entered in 1994. The Oregon Supreme Court explained that Oregon Revised Statute § 161.620 "prevails over every other provision of law" and requires that juveniles who were under the age of 17 when they committed aggravated murder "be entitled to the possibility of parole" from the outset of his sentence. *Engweiler v. Bd. of Parole and Post-Prison Supervision*, 343 Or. 536, 544-45, 175 P.3d 408 (Or. 2007) (*Engweiler V*). The statute also prohibits a *de facto* life sentence imposed as an aggregate determinate term-of-years sentence under the state sentencing

guidelines. *State v. Davilla*, 157 Or. App. 639, 643 (1998) (holding that a 116-year determinate sentence violates Oregon Revised Statute § 161.620). Under *Davilla*, the statute bans a term-of-years sentence that "is in practical effect imprisonment for life without the possibility of release or parole." *Id.*

Here, Plaintiff seeks a release mechanism to give effect to the state statute. As applied to Plaintiff, the bifurcated sentencing scheme contained no release mechanism to give effect to Oregon Revised Statute § 161.620. *Engweiler V*, 343 Or. at 546 (so noting with respect to indeterminate sentence). Thus, Plaintiff is entitled to summary judgment on Defendants' Fourth Affirmative Defense of *Heck* preclusion.

### III. *Younger* Abstention Doctrine

Plaintiff contends that the *Younger* abstention does not bar his claims. The *Younger* doctrine precludes federal courts sitting in equity from enjoining "pending state criminal proceedings" or state "civil enforcement actions akin to criminal proceedings." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758-59 (9th Cir. 2014) (citations and internal quotations omitted). Abstention by the federal district court is required if: (1) the state proceeding is ongoing; (2) that proceeding implicates important state interests; (3) there is an adequate opportunity to raise constitutional challenges in the state proceeding; and (4) the requested relief would enjoin or have the practical effect of enjoining the ongoing state proceeding. *Id.* (citations omitted). In the present case, the Ninth Circuit held that the *Younger* abstention does not bar Plaintiff's federal constitutional claims. *Cunio*, 692 Fed. App'x at 465. Because Plaintiff could not obtain complete relief for his 42 U.S.C. § 1983 claims in state court proceedings, this Court finds that Plaintiff is entitled to summary judgment on Defendants' Third Affirmative Defense.

## IV. Defendants' Other Arguments

### A. Ripeness

Defendants argue that because Plaintiff's claims are not ripe, this Court lacks jurisdiction. Defs.' Combined Resp. 20, ECF No. 60. Ripeness is an Article III doctrine designed to ensure that courts adjudicate live cases or controversies and do not issue advisory opinions or declare rights in hypothetical cases. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). A proper ripeness inquiry contains both a constitutional and a prudential component. *Id.*

The constitutional component of ripeness is "often treated under the rubric of standing" and, in many cases, "coincides squarely with standing's injury in fact prong." *Id.* That prong requires the plaintiff to identify "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Clark v. City of Seattle*, 899 F.3d 802, 809 (9th Cir. 2018). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way. For an injury to be concrete, it must actually exist; in other words, it is real, and not abstract. Intangible harms and a risk of real harm can be sufficiently concrete." *Id.* at 809–10.

The prudential component of ripeness "is guided by two overarching considerations: the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1154 (9th Cir. 2017). Those prudential considerations are discretionary and look "to whether the case presents a concrete factual situation or purely legal issues." *Id.*

Here, Plaintiff has not had a *Miller* hearing. The parties agree that no one, including Defendants, will hold a *Miller* hearing for Plaintiff without a court order. As the Court has

discussed, Plaintiff being subjected to Oregon's bifurcated sentencing scheme, without an opportunity for a *Miller* hearing, violates Plaintiff's Eighth and Fourteenth Amendment rights. Because Plaintiff suffers concrete harm in the form of constitutional violations, the Court finds that Plaintiff's claims are ripe.

### B. Eleventh Amendment Immunity

Defendants argue that they are immune from suit and are not "persons" under 42 U.S.C. § 1983. Defs.' Combined Resp. 25, ECF No. 69. The States are generally immune from suit under the Eleventh Amendment and, because actions against a state officer in his or her official capacity are, "in essence, actions against the governmental entity of which the officer is an agent," so are such officers. *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982). Similarly, only a "person" may be sued under § 1983, and neither the States nor their officers are "persons" within the meaning of that statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Eleventh Amendment immunity and qualified immunity are affirmative defenses. *Norwood v. Vance*, 591 F.3d 1062, 1075 (9th Cir. 2010). They must be pled in the Answer or they are waived. *Id.*; *see also Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995) (Eleventh Amendment immunity waived by failing to "quickly" raise that affirmative defense in federal court). Defendants did not plead any immunity defenses in their Answer to Plaintiff's Third Amended Complaint. *See* ECF No. 45. Thus, Defendants waived those affirmative defenses by appearing and litigating the merits and other defenses for four years of this litigation.

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's Motion for Summary Judgment (ECF No. 57) and denies Defendants' Cross-Motion for Summary Judgment (ECF No. 60) as moot. The Parole Board shall hold a *Miller* hearing consistent with this Opinion and Order.

**IT IS SO ORDERED.**

DATED this 20th day of February 2020.

s/ Mustafa T. Kasubhai<br>
MUSTAFA T. KASUBHAI<br>
United States Magistrate Judge